ChieF Justice Roberts,
with whom Justice Scalia, Justice Thomas, and Justice Abito join,
dissenting.
The Medicaid Act established a collaborative federal-state program to assist the poor, elderly, and disabled in obtaining medical care. The Act is Spending Clause legislation; in ex­ *617 change for federal funds a State agrees to abide by specified rules in implementing the program. One of those rules is set forth in the Act, which requires States to meet particular criteria in establishing Medicaid reimbursement rates for those providing services under the Act. 42 U. S. C. § 1396a (a)(30)(A) (hereinafter § 30(A)). In 2008 and 2009, California enacted legislation reducing the rates at which it would com­pensate some providers. Certain providers and individuals receiving Medicaid benefits thought the new reimbursement rates did not comply with the criteria set forth in § 30(A). They sued the State to prevent the new rates from going into effect.
But those plaintiffs faced a significant problem: Nothing in the Medicaid Act allows providers or beneficiaries (or anyone else, for that matter) to sue to enforce § 30(A). The Act in­stead vests responsibility for enforcement with a federal agency, the Centers for Medicare & Medicaid Services (CMS). See, e. g., 42 U. S. C. § 1316(a)(1). That is settled law in the Ninth Circuit. See Sanchez v. Johnson, 416 F. 3d 1051,1058-1062 (2005) (“[T]he flexible, administrative stand­ards embodied in [§ 30(A)] do not reflect a Congressional in­tent to provide a private remedy for their violation”). And it is the law in virtually every other circuit as well. See, e. g., Long Term Care Pharmacy Alliance v. Ferguson, 362 F. 3d 50, 57-59 (CA1 2004) (holding that it would be inconsist­ent with this Court’s precedent to find that § 30(A) creates rights enforceable by private parties). The respondents have never argued the contrary. Thus, as this litigation comes to us, the federal rule is that Medicaid reimbursement rates must meet certain criteria, but private parties have no statutory right to sue to enforce those requirements in court.
The providers and beneficiaries sought to overcome that difficulty by arguing that they could proceed against the State directly under the Supremacy Clause of the Constitu­tion, even if they could not do so under the Act. They contended that the new state reimbursement rates were in­ *618 consistent with the requirements of § 30(A). The Suprem­acy Clause provides that a federal statute such as § 30(A) preempts contrary state law. Therefore, the providers and beneficiaries claimed, they could sue to enforce the Suprem­acy Clause, which requires striking down the state law and giving effect to § 30(A). The Ninth Circuit agreed with this .argument and blocked the new state reimbursement rates.
During briefing and argument in these cases, the parties have debated broad questions, such as whether and when constitutional provisions as a general matter are directly enforceable. It is not necessary to consider these larger is­sues. It is not even necessary to decide whether the Su­premacy Clause can ever provide a private cause of action. The question presented in the certiorari petitions is narrow: ‘Whether Medicaid recipients and providers may maintain a cause of action under the Supremacy Clause to enforce [§ 30(A)] by asserting that the provision preempts a state law reducing reimbursement rates.” To decide these cases, it is enough to conclude that the Supremacy Clause does not provide a cause of action to enforce the requirements of § 30(A) when Congress, in establishing those requirements, elected not to provide such a cause of action in the statute itself.
The Supremacy Clause operates differently from other constitutional provisions. For example, if Congress says in a law that certain provisions do not give rise to a taking without just compensation, that obviously does not resolve a claim under the Takings Clause that they do. The Suprem­acy Clause, on the other hand, is “not a source of any federal rights.” Chapman v. Houston Welfare Rights Organiza­tion, 441 U. S. 600, 613 (1979); accord, Dennis v. Higgins, 498 U. S. 439,450 (1991) (contrasting, in this regard, the Suprem­acy Clause and the Commerce Clause). The purpose of the Supremacy Clause, is instead to ensure that, in a conflict with state law, whatever Congress says goes. See The Federal­ist No. 33, p. 205 (C. Kossiter ed. 1961) (A. Hamilton) (the *619 Supremacy Clause “only declares a truth which flows imme­diately and necessarily from the institution of a federal government”).
Thus, if Congress does not intend for a statute to supply a cause of action for its enforcement, it makes no sense to claim that the Supremacy Clause itself must provide one. Saying that there is a private right of action under the Supremacy Clause would substantively change the federal rule estab­lished by Congress in the Medicaid Act. That is not a proper role for the Supremacy Clause, which simply ensures that the rule established by Congress controls.
Indeed, to say that there is a federal statutory right en­forceable under the Supremacy Clause, when there is no such right under the pertinent statute itself, would effect a com­plete end run around this Court’s implied right of action and 42 U. S. C. § 1983 jurisprudence. We have emphasized that “where the text and structure of a statute provide no indica­tion that Congress intends to create new individual rights, there is no basis for a private suit, whether under § 1983 or under an implied right of action.” Gonzaga Univ. v. Doe, 536 U. S. 273, 286 (2002). This body of law would serve no purpose if a plaintiff could overcome the absence of a statu­tory right of action simply by invoking a right of action under the Supremacy Clause to the exact same effect. Cf. Astra USA, Inc. v. Santa Clara County, 563 U. S. 110, 118 (2011) (rejecting contention that contract incorporating stat­utory terms could be enforced in private action when statute itself could not be; “[t]he absence of a private right to enforce the statutory ceiling price obligations would be rendered meaningless if [contracting] entities could overcome that ob­stacle by suing to enforce the contract’s ceiling price obliga­tions instead”).
The providers and beneficiaries argue, however, that the traditional exercise of equity jurisdiction supports finding a direct cause of action in the Supremacy Clause. This contention fails for the same reason. It is a longstanding *620 maxim that “[e]quity follows the law.” 1 J. Pomeroy, Trea­tise on Equity Jurisprudence § 425 (3d ed. 1905). A court of equity may not “create a remedy in violation of law, or even without the authority of law.” Rees v. Watertown, 19 Wall. 107, 122 (1874). Here the law established by Congress is that there is no remedy available to private parties to en­force the federal rules against the State. For a court to reach a contrary conclusion under its general equitable pow­ers would raise the most serious concerns regarding both the separation of powers (Congress, not the Judiciary, decides whether there is a private right of action to enforce a fed­eral statute) and federalism (the States under the Spending Clause agree only to conditions clearly specified by Congress, not any implied on an ad hoc basis by the courts).
This is not to say that federal courts lack equitable powers to enforce the supremacy of federal law when such action gives effect to the federal rule, rather than contravening it. The providers and beneficiaries rely heavily on cases of this kind, most prominently Ex parte Young, 209 U. S. 123 (1908). Those cases, however, present quite different questions in­volving “the pre-emptive assertion in equity of a defense that would otherwise have been available in the State’s en­forcement proceedings at law.” Virginia Office for Protec­tion and Advocacy v. Stewart, 563 U. S. 247,262 (2011) (Ken­nedy, J., concurring). Nothing of that sort is at issue here; the respondents are not subject to or threatened with any enforcement proceeding like the one in Ex parte Young. They simply seek a private cause of action Congress chose not to provide.
* * *
The Court decides not to decide the question on which we granted certiorari but instead to send the cases back to the Court of Appeals, because of the recent action by CMS approving California’s new reimbursement rates. But the CMS approvals have no impact on the question before this Court. If, as I believe, there is no private right of action *621 under the Supremacy Clause to enforce § 30(A), that is the end of the matter. If, on the other hand, the Court believes that there is such a cause of action, but that CMS’s recent rate approvals may have an effect on that action going for­ward, then the Court should say just that and then remand to the Ninth Circuit for consideration of the effect of the agency approvals.
I am not sure what a remand without answering the pre­liminary question is meant to accomplish. The majority claims that the agency’s recent action “may change the [lower courts’] answer” to the question whether the particu­lar state rates violate § 30(A). Ante, at 614. But that fact-­specific question is not the one before us; we chose not to grant certiorari on the question whether California’s rates complied with § 30(A), limiting our grant to the cause of ac­tion question. 562 U. S. 1177 (2011).
The majority also asserts that the lower courts must “de­cide whether these cases may proceed directly under the Su­premacy Clause now that the agency has acted.” Ante, at 616. The majority contends that the parties have not “fully argued this question.” Ibid. But the agency proceedings that ultimately led to the CMS approvals were well under­way when this Court granted certiorari. The parties de­bated the import of the parallel administrative proceedings in their initial briefs and at oral argument. See, e. g., Brief for Petitioner 28-29 (“Private lawsuits ... interfere with ... CMS’s own enforcement procedures,” as is “vividly demon­strated in the present cases”); Brief for Respondent Santa Rosa Memorial Hospital et al. in No. 10-283, p. 46 (“This case vividly illustrates why the [administrative] enforcement scheme . . . cannot substitute for a constitutional preemp­tion claim”). No party — nor the United States as amicus curiae — argued that any action by CMS would affect the an­swer to the question we granted certiorari to review. See, e. g., Tr. of Oral Arg. 53-54 (counsel for respondents) (ar­guing that, “to be sure,” there would be a cause of action *622 under the Supremacy Clause even after the agency took ac­tion on the challenged rates).
Once the CMS approvals were issued, this Court directed the parties to file supplemental briefs to address “the effect, if any, of the [CMS approvals] on the proper disposition of this case.” Post, p. 1011. Again, no one argued on supple­mental briefing that the CMS approvals affected the answer to the question before this Court. See, e. g., Supp. Letter Brief for Certain Respondents 6 (“the CMS findings do not directly resolve whether the Constitution supports a right of action”); Supp. Letter Brief for Petitioner 6 (agreeing that “if a preemption cause of action may be stated here against the State, [CMS] approval may affect its merits but not its existence”). It seems odd, then, to claim that the parties have not had the opportunity to fully address the impact of the agency action on the question that we granted certiorari to review: whether the Ninth Circuit correctly recognized a private cause of action under the Supremacy Clause to en­force § 30(A).
So what is the Court of Appeals to do on remand? It could change its view and decide that there is no cause of action directly under the Supremacy Clause to enforce § 30(A). The majority itself provides a compelling list of reasons for such a result: “The Medicaid Act commits to the federal agency the power to administer a federal program”; “the agency is comparatively expert in the statute’s sub­ject matter”; “the language of the particular provision at issue here is broad and general, suggesting that the agency’s expertise is relevant”; and APA review would provide “an authoritative judicial determination.” Ante, at 614. Allowing for both Supremacy Clause actions and agency en­forcement “threatens potential inconsistency or confusion,” and imperils “the uniformity that Congress intended by centralizing administration of the federal program in the agency.” Ante, at 615; see Gonzaga, 536 U. S., at 291-292 (Breyer, J., concurring in judgment) (explaining that Con­ *623 gress often means to preclude a private right of action in statutes where it employs an administrative enforcement scheme that achieves “expertise, uniformity, widespread con­sultation, and resulting administrative guidance,” while “avoiding] the comparative risk of inconsistent interpreta­tions and misincentives that can arise out of an occasional inappropriate application of the statute in a private action for damages”).
The majority acknowledges, in light of all this, that the Supremacy Clause challenge appears “at best redundant,” and that “continuation of the action in that form would seem to be inefficient.” Ante, at 616. Still, according to the ma­jority, the Court of Appeals on remand could determine that the Supremacy Clause action may be brought but then must abate “now that the agency has acted,” ibid. — as everyone knew the agency would. A Court concerned with “ineffi-­cien[cy]” should not find that result very palatable, and the majority cites no precedent for a cause of action that fades away once a federal agency has acted. Such a scenario would also create a bizarre rush to the courthouse, as liti­gants seek to file and have their Supremacy Clause causes of action decided before the agency has time to arrive at final agency action reviewable in court.
Or perhaps the suits should continue in a different “form,” by which I understand the Court to suggest that they should morph into APA actions. The APA judicial review provi­sions, however, seem to stand in the way of such a transfor­mation. To convert the litigation into an APA suit, the current defendant (the State) would need to be dismissed and the agency (which is not currently a party at all) would have to be sued in its stead. 5 U. S. C. §§701-706. Given that APA actions also feature — among other things— different standards of review, different records, and different potential remedies, it is difficult to see what would be left of the original Supremacy Clause suit. Or, again, why one should have been permitted in the first place, when agency *624 review was provided by statute, and the parties were able to and did participate fully in that process.
I would dispel all these difficulties by simply holding what the logic of the majority’s own opinion suggests: When Con­gress did not intend to provide a private right of action to enforce a statute enacted under the Spending Clause, the Supremacy Clause does not supply one of its own force. The Ninth Circuit’s decisions to the contrary should be reversed.